# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

**ST. JOHN'S MERCY MEDICAL CENTER**
615 New Ballas Rd
St. Louis, MO 63141                           )
                                              )
                            **Plaintiff,**    )        Case No.
            **v.**                            )
                                              )
**SYLVIA BURWELL,** Secretary of the          )
U.S. Department of Health and Human           )
Services                                      )
                                              )
                            **Defendant.**    )
_____  )

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## <u>JURISDICTION AND VENUE</u>

1.      This is a civil action brought to obtain judicial review of a final decision rendered by the Provider Reimbursement Review Board ("PRRB", or "Board"), acting as a component of the United States Department of Health and Human Services ("HHS").   The decision for which judicial review is hereby sought is PRRB Case number 04-0839 in the matter of Alternate Remand of the SSI Fraction under CMS Ruling CMS-1498-R.

2.This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act", and the Administrative Procedure Act, 5 U.S.C. §706.

3.     This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. §1331, 5 U.S.C. §701, 28 U.S.C. §2201 and 28 U.S.C. 1361.

4.     Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. §1391 (e).

## PARTY

5.     Plaintiff, St. John's Mercy Medical Center (hereinafter, "Plaintiff", "Plaintiff Provider" or "Provider") is an acute care, in-patient healthcare facility that serves a disproportionate share of low-income patients. Plaintiff Provider has a Medicare Provider number of 26-0020, and this action concerns those cost reports filed for the Fiscal Year Ending ("FYE") 06/30/2000.

6.     At all relevant times, Plaintiff Provider herein (hereinafter, collectively referred to as the "Provider") had a Medicare provider agreement with the Secretary of the U.S. Department of Health and Human Services (hereinafter, the "Secretary"), and was eligible to participate in the Medicare program.

7.     This Court has jurisdiction over Provider's claims, pursuant to 42 U.S.C. §1395oo because:

    a.     Provider filed cost reports as required by 42 U.S.C. §1395oo(a);

    b.     Provider was dissatisfied with its fiscal intermediary's ("FI") final determination,"...as to the amount of total program reimbursement due the provider...for the period covered by such report," as required by 42 U.S.C. §1395oo(a)(2);

c.      The amount in controversy for Provider exceed $10,000, as required by 42 U.S.C. §1395oo(a)(3);

d.      Provider was issued its Notice of Program Reimbursement ("NPR") by the government's selected fiscal Intermediary ("FI") on September 8, 2003 (*see*, **Exhibit "A"**);

e.      Provider thereafter timely filed an appeal with the PRRB pursuant to 42 U.S.C. §1395oo(a)(3).   Said written appeal request is part of the agency's administrative record, a copy attached hereto as **Exhibit "B".**

e.      As required, Provider submitted its Schedule of Providers and jurisdictional documents to the PRRB. Jurisdictional documents are attached hereto as **Exhibits "C"** through **"F"**.

f.The Board remanded Provider's appeal by way of an Order dated December 23, 2010 (*see*, **Exhibit "G"**).

g.      Provider timely requested that the PRRB reconsider its Order of Remand, and Provider requested, by way of the Representative's cover letter (*see,* **Exhibit "H-2")** a granting for Expedited Judicial Review ("EJR), that request sent on July 20, 2016 (s*ee,* **Exhibit "H-1"**), and concurrently, a Motion and Request for Reinstatement (*see,* **Exhibit "H-3"**).

h.      To date, the PRRB has not sought to either grant nor deny Provider's Request for Reconsideration and EJR.   Nevertheless, Plaintiff Provider seeks to have this timely filed matter adjudged by this Court, and thus, file the instant complaint within sixty (60) days of what shall be the final decision of the Board.

i. Plaintiff, Provider has exhausted all administrative remedies under Federal law.

8.      This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1361 because the Hospital is entitled to a writ of mandamus requiring the Secretary to retract CMS Ruling 1498-R and to ensure that the Provider's Disproportionate Share Hospital eligibility and adjustments are calculated in accordance with the law.

9.      This Court has jurisdiction to hear this case pursuant to either the Administrative Procedures Act, 5 U.S.C. §701 et seq., and/or the Declaratory Judgment Act, 28 U.S.C. §2201 because there is an actual controversy over the amounts to which the Provider was entitled to receive by way of its Medicare Disproportionate Share Hospital adjustments, and the Provider seeks a determination that the Secretary's Ruling 1498-R is unlawful because it divests the Provider Reimbursement Review Board of jurisdiction over their timely appeals, and requires the Secretary's fiscal intermediaries to recalculate their DSH eligibility and adjustments in violation of the Medicare Act and the law of this Federal Judicial Circuit.

10.      Defendant, Sylvia M. Burwell, Secretary of the Department of Health and Human Services, or her predecessor(s) in office, is the federal officer responsible for the administration of the Medicare program.   Defendant, Burwell is sued in her official capacity.

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

11.      The Medicare program was established to provide health insurance to the aged and disabled.   42 U.S.C. §§1395-1395cc.   The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (HHS) charged with administering the Medicare program.

–4–

12.     The operating costs of inpatient hospital services are reimbursed by Medicare primarily through the Prospective Payment System (PPS).  42 U.S.C. §1395ww(d).  The PPS statute contains a number of provisions that adjust reimbursements based on hospital-specific factors.     See,   42   U.S.C.   §1395ww(d)(5).     This   case   involves   the   hospital-specific disproportionate share adjustment, which requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients."   42 U.S.C. §1395ww(d)(5)(F)(i)(I).

13.     Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the hospital's "...disproportionate patient percentage (DPP)."   42 U.S.C. §1395ww(d)(5)(F)(v).   The DPP is the sum of two fractions, the "Medicare and Medicaid fractions," for a hospital's fiscal period.   42 U.S.C. §1395ww(d)(5)(F)(vi).   Hospitals whose DSH percentages meet certain thresholds receive an adjustment that results in increased PPS payments for inpatient hospital services.   42 U.S.C. §1395ww(d)(5)(F)(ii).

14.     The first fraction's numerator is the number of a hospital patient days for such period who (for such days) were entitled to both Medicare Part A and Supplemental Security Income (SSI) benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A.   *Id*.   This case involves this first fraction, which is hereafter referred to as the "SSI/Medicare fraction."

15.     The second fraction's numerator is the number of hospital patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of the hospital's patient days for such period.   *Id*.   The second fraction is frequently

referred to as the Medicaid fraction, which is not directly at issue in this case.

16.     The SSI program is administered by the Social Security Administration (SSA); therefore, identifying patients who were entitled to SSI during their hospitalization requires access to SSA's SSI data.   To implement the DSH legislation, the number of patient days for those patients entitled to both Medicare Part A and SSI is determined by matching data from the MEDPAR file, which is Medicare's database of hospital inpatients, with a file created for CMS by SSA to identify SSI-eligible individuals.

17.     In *Baystate Medical Center v. Leavitt,* 545 F. Supp. 2d 20, as amended, 587 F. Supp. 2d 37,44 (D.D.C.2008) ("*Baystate"*), the United States District Court for the District of Columbia determined that the Secretary was not using the "best available data" to determine providers' SSI fractions.   545 F. Supp. 2d at 57-58.   In order to correct the Secretary's errors, the Court specifically ordered the Secretary to:

> a.      Use patient social security numbers in the data matching process. 587 F.
>    Supp. 2d at 40;
>
> b.      Use updated SSA records that become available before the time that the cost
>    report at issue is settled.   545 F. Supp. 2d at 58;
>
> c.      Forced pay SSI records. *Id.*, and;
>
> d.      Inactive SSI records.      *Id.*

18.     CMS' payment and audit functions under the Medicare program are contracted out to insurance companies know as Fiscal Intermediaries ("FI") or Medicare Administrative Contractors ("MAC"). Fiscal intermediaries determine payment amounts due the providers under Medicare law and regulations. 42 U.S.C. §1395h, 42 C.F.R. §§413.20(b) and 413.24(b).

Although the intermediary calculates the DPP, it is CMS that computes the SSI fraction.

19.     At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the portion of those costs allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803.

20.     A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Board within 180 days of the receipt of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

## CMS Ruling 1498-R

21.     On April 28, 2010, CMS issued Ruling 1498-R. This ruling applies to appeals in any of the three following categories: 1) challenges to CMS' data matching process for matching Medicare and SSI eligibility data in determining the SSI/Medicare Fraction; 2) challenges to the exclusion from the disproportionate patient percentage (DPP) of non-covered inpatient hospital days (for example, Medicare secondary payer ((MSP) days or exhausted benefit (EB) days); or (3) challenges to the exclusion from the DPP of labor/delivery room (LDR) patient days.

22.     Pursuant to CMS Ruling 1498-R, any appeal involving any of the above three categories must be remanded by the Board to the fiscal intermediary. The Ruling further requires the fiscal intermediary to revise the SSI/Medicare Fraction to include certain inpatient hospital days (e.g., MSP and EB days) in the SSI/Medicare Fraction. The Ruling further requires the intermediary to re-compute the SSI fraction using the revised data matching process ordered by the United States District Court for the District of Columbia in *Baystate Medical Center v. Leavitt,*

545 F. Supp 2d. 20, as amended, 587 F. Supp. 2d 37, 44 (D.D.C. 2008) ("*Baystate*"), or in the alternative, the methodology implemented pursuant to the 2011 Inpatient Hospital Prospective Payment System Rule.

23.     CMS Ruling 1498-R states that its agreement to re-compute the SSI/Medicare Fraction:

> ...eliminates any actual case or controversy regarding the hospital's previously calculated SSI fraction and DSH payment adjustment and thereby renders moot each properly pending claim in a DSH appeal involving the hospital's previously calculated SSI fraction and the process by which CMS matches Medicare and SSI eligibility data, provided that such claim otherwise satisfies the applicable jurisdic--tional and procedural requirements of section 1878 of the Act, the Medicare regulations, and other agency rules and guidelines.

24.     CMS Ruling 1498-R further provides that, "it is hereby held that the PRRB and the other administrative tribunals lack jurisdiction over each properly pending claim on the SSI/Medicare Fraction data matching process issue, provided that such claim otherwise satisfies the applicable jurisdictional and procedural requirements for appeal."

25.     The regulation at 42 C.F.R. §401.108 states that CMS Rulings are binding on all CMS components. With respect to the scope of the Board's legal authority, the regulation at 42 C.F.R. §405.1867 states that, "[i]n exercising its authority to conduct proceedings... the Board must comply with all the provisions of Title XVIII of the Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator as described in §401.108."

### The Revised Matching Methodology does not Comply with *Baystate*

26.     The revised matching methodology mandated by CMS Ruling 1498-R does not address one of the key matching deficiencies identified by the federal district court in *Baystate, supra* (as amended). Specifically, the revised methodology does not mandate the use of Social

Security numbers.

27.     Under the revised matching methodology mandated under CMS Ruling 1498-R, the Medicare Enrollment Database (EDB) will be used for the purpose of matching social security numbers of individuals entitled to Medicare benefits to individuals who are also receiving SSI benefits.

28.     Information in the EDB is not retrievable by individual social security numbers.   The Federal Register Privacy Act notices states that information in the EDB is retrievable by Health Insurance Claim (HIC) number or name search.   The official description of the EDB states that the records in the system include the "individual's health insurance numbers, name, geographic location, race/ethnicity, sex, and date of birth."   There is not indication from the Federal Register notices that Social Security numbers are included in the EDB.   *See*, 67 Fed. Reg. 3203, January 23, 2002; 73 Fed. Reg. 10249, February 26, 2008.

29.     As a result, 1498-R does not address one of the key matching deficiencies identified by the district court in *Baystate, supra* (as amended), i.e., the failure to match Medicare and SSI records on the basis of Social Security numbers.

30.     Moreover, there are substantive deficiencies in the records maintained by the Social Security Administration (SSA), which CMS 1498-R fails to address.   CMS states, "Codes beginning with the letter, "S" reflect records that are in a "suspended" status and, according to SSA, do not represent individuals who are entitled to SSI benefits."   The S codes will be changed to an active code upon the making of a retroactive entitlement determination.   However, this change is only reflected on SSA's records for the month in which the retroactive SSI payment is actually made, and not for any prior months which where in a suspended status.   Thus, the match

will identify entitlement only for the month in which the retroactive payment is actually made, and not for any prior months that the retroactive payment was intended to cover.

31.     Similarly, Code S-06 is applied where the payment was suspended because "recipient's address is unknown."   The fact that a recipient's address is unknown is hardly a reason for denying payment under the applicable regulations. An otherwise eligible individual is "entitled" to SSI benefits unless the reason for non-payment is one of the reasons specified in the applicable regulations. *See*, 20 C.F.R. §§416.207-416.216.   Inasmuch as "a recipients' address is unknown" is not one of the reasons specified in 20 C.F.R. §§416.207-416.216, these individuals should be placed in an active code status, so that the revised matching program will include them in the SSI/Medicare Fraction.   Once again, CMS Rule 1498-R does not address this deficiency in the process of formulating the SSI/Medicare Fraction.

### The Recalculations Required by CMS Ruling 1498-R Contradict *Baystate* and the D.C. Circuit's Precedent

32.     In addition to purporting to require the SSI/Medicare Fraction to be recalculated in a manner consistent with *Baystate,* CMS Ruling 1498-R requires the inclusion of certain additional days in the SSI/Medicare Fraction, such as "Exhausted Benefit" (EB) days, "Medicare Secondary Payer Days" (MSP Days), and potentially Medicare HMO days.   To wit, the Ruling states:

> On CMS' view, the inpatient days of a person who was entitled to Medicare Part A should be included in the DPP, regardless of whether a specific inpatient hospital stay was covered under Part A or whether the patient's Part A hospital benefits were exhausted... On the other hand, we believe that the non-covered inpatient days (for example, MSP days) and the exhausted benefit days of patients who were still entitled to Part A do not belong in the numerator of the Medicaid fraction because, under section 1886(d)(5)(F)(vi)(II) of the Act, the Medicaid fraction numerator consists of the number of Medicaid-eligible inpatient days of persons, "who were not

–10–

> entitled to benefits under Part A;" again, a beneficiary remains entitled to Medicare Part A even if an inpatient stay is not covered under Part A (for example, because the inpatient days were covered and paid by a primary group health plan) and even when a patient's Part A hospital benefits were exhausted." *See,* Ruling at 9-10.

33.     This is the same reasoning that the Secretary offered for including Medicare Part C Days in the SSI/Medicare Fraction and for excluding Part C days from the numerator of the Medicaid fraction:

> The key interpretive question in this case is whether a person enrolled in an M+C plan is still 'entitled to benefits under Part A.' The Secretary says yes... If an M+C patient is entitled to benefits under Part A (the Secretary's interpretation), then his hospital days are counted in both the numerator of the Medicare fraction, if he is entitled to SSI, and the denominator of that fraction.   At the same time, the patient's days are not counted in the numerator of the Medicaid fraction, but are counted in the denominator of that fraction.
>
> *Northeast Hosp. Corp. v. Sebelius,* 657 F.3d 1,5 (D.C. Cir. 2011) (*Northeast*).

34.     In *Northeast,* the D.C. Circuit held that the Secretary's FY Inpatient Prospective Payment System final rule 69 Fed. Reg. 48916 (Aug. 11, 2004) effectuated a change to her past policy with respect to Medicare Part C days in her 2004 version of 42 C.F.R. §106 and that doing so constituted an unlawful retroactive rule making if the new policy is applied to cost reports for fiscal years that ended prior to the effective date of the new rule, October 1, 2004.

> [I]t is apparent that the Secretary's decision to apply her present interpretation of the DSH statute to fiscal years 1999-2002 violates the rule against retroactive rulemaking. The Secretary's interpretation, as set forth in the 2004 rulemaking and resulting amendment to §412.106, contradicts her former practice of excluding M+C days from the Medicare fraction.   Moreover, the amendment attaches new legal consequences to hospitals' treatment of low income patients during the relevant time period.   Hospitals that serve a disproportionately large number of such patients receive a statutorily mandated "additional payment from the Secretary, 42 U.S.C. §1395ww(d)(5)(F)(I), and whether a particular hospital qualifies for this payment, and the size of

the payment the hospital receives, depends on the hospital's DSH
fractions.   Any rule that alters the method for calculating those fractions,
therefore, changes the legal consequences of treating low-income
patients.
*Northeast, supra* at 16-17.

35.     Despite the D.C. Circuit's decision in *Northeast*, the statutory language and the
Secretary's prior interpretations thereof prohibit the Secretary from interpreting the term,
"eligible" under Medicare Part A to include MSP, EB and other similar charges that are not "paid"
by Medicare Part A.

a.     The pertinent statutory provisions require entitlement to Part A benefits as
a condition of inclusion in the SSI/Medicare Fraction.   With respect to EB days, the
Medicare statue provides that the Part A benefit for inpatient hospital services covers
only a specified number of days per spell of illness.   42 U.S.C. §1395d(a)(1); 42
C.F.R. §409.61(a).   Therefore, payment under Part A may not be made for services
rendered after those limits have been exhausted.   42 U.S.C. §1395d(b)(1).

b.     Similarly, under the Medicare MSP provisions, payment may not be made
under Medicare Part A, "when payment has been made or can reasonably be expected
to be made" under a health insurance plan or liability insurance policy.   42 U.S.C.
§1395y(b)(2)(A).   There is an exception under which CMS is authorized to make
"conditional payments" if the primary payer has not made or cannot reasonably be
expected to make prompt payment.   However, upon receipt of payment from the
primary payer, the beneficiary or provider must reimburse the Medicare trust fund
for these conditional payments.   42 U.S.C. §1395y(b)(2)(B)(ii).

c.     This statutory scheme clearly establishes that patients to whom the MSP

and EB provisions are applied are not "entitled to benefits under Part A." *See, Jewish Hosp. v. Secretary of Health & Human Servs.,* 19 F.3d 270,275 (6th Cir. 1994)("entitled" as used in the SSI/Medicare Fraction means that the beneficiary "possesses the right or title to that benefit" and the "Medicare proxy fixes the calculation upon the absolute right to receive an independent and readily defined payment.") *Legacy Emanuel Hosp. & Health Ctr. v. Shalala,* 97 F.3d 1261, 1264-65 (9th Cir. 1996) (the term 'entitled' refers to the absolute right to... payment").

d.       The Secretary has also interpreted "entitled" to mean, "eligible for the benefit" under the Part D drug benefit program.   CMS has stated as follows in this regard:

> [We] generally have interpreted the concept of "entitled" to benefits to mean that an individual has met all of the necessary requirements for a benefit (that is, is eligible for the benefit), and has actually applied for and been granted coverage... Accordingly, we will deem an individual "entitled" to Part A, and thus a Part D eligible individual, if the individual is eligible for benefits under Part A, and has actually applied for and been granted coverage under Part A.

70 Fed. Reg. 4194, 4202 (Jan. 28, 2005).

e.       By definition, no payment can be made for EB days under Part A, and therefore a patient cannot be said to be "entitled to" such payment.   Indeed, the Secretary has explicitly conceded that there is no entitlement to Part A benefits for EB days with respect to the Medicare DSH adjustment for "Medicare dependent, small rural hospital[s]." *See*, 42 U.S.C. §1395ww(d)(5)(G)(iv)(IV).


f.In the September 4, 1990 IPPS final rule, the Secretary stated that individuals are

"entitled to benefits under [Medicare] part A" only when they are entitled to have their medical services paid for under Medicare part A.   The rule states that, "[e]ntitlement to payment under part A ceases after the beneficiary has used 90 days in a benefit period and has either exhausted the lifetime reserve days or elected not to use available lifetime reserve days."   55 Fed. Reg. 35990, 35996 (Sept. 4, 1990). The Secretary went on to state that, "[s]ince patients who have exhausted their part A benefits are no longer entitled to payment under part A, we do not believe such stays should be counted' in the Medicare fraction. *Id.*

g.      The same reasoning applies to MSP days in which payment is made by the primary payer, and not the Medicare program.   In such cases, the absence of a Part A payment clearly means that an individual is not "entitled" to such payment. Indeed, inpatient psychiatric hospital and skilled nursing care that is paid for by a primary payer is not counted against the number of inpatient care days available to the beneficiary under Medicare Part A.   42 C.F.R. §411.30(a).   Presumably, these days would be counted against a beneficiary's available benefit days if the beneficiary was "entitled" to payment for those days from Medicare.   Moreover, the conditional payments which may be made under the MSP rules do not establish an ""absolute, independent" right to payment under Part A."   *Jewish Hosp., supra.*

36.      In fact, Ruling 1498-R explicitly concedes that the FY 2005 final rule changed the CMS interpretation and policies concerning whether "non-covered" days may be included in the SSI/Medicare Fraction.   The Ruling states:

> The FY 2005 IPPS final rule amended the DSH regulation by
> eliminating the requirement that Part A inpatient hospital days

–14–

must be covered in order for such days to be included in the
SSI fraction.   69 Fed. Reg. at 49246 (amending 42 C.F.R. §
412.106(b)(2)(I).   *See*, also *Id.* at 49098-99... Under our
revised policy, the inpatient days of a person who was entitled
to Medicare Part A are included in the numerator of the hospital's
DSH SSI fraction (provided that the patient was also entitled to
SSI) and in the SSI fraction denominator, regardless of whether
the individual's inpatient hospital stay was covered under Part A
or whether the patient's Part A hospital benefits were exhausted.

## PROCEDURAL INVALIDITY OF CMS 1498-R

37.    CMS 1498-R purports to divest the Board of jurisdiction over the categories of

appeals covered by that Ruling.   However, this policy is incompatible with the requirement that

the Board remand cases subject to CMS 1498-R back to the Intermediary for re-computation of

the SSI fraction.

38.    It is well established that once a tribunal has determined that it lacks jurisdiction

over a matter, its only option is to dismiss without prejudice. Under the Secretary's regulations, a

dismissal for lack of jurisdiction is a final decision which is immediately subject to judicial

review, while a remand is an interlocutory decision which is not immediately appealable. See 42

C.F.R. § 405.1875(e)(4)(iii) (decision by the Administrator remanding a matter to the Board for

further proceedings [i]s not a final decision for purposes of judicial review). See also 42 C.F.R. §

405.1877(b)(3)(ii) (precluding judicial review of an Administrator's remand order).

39.    Accordingly, CMS 1498-R is procedurally invalid because it purports to divest

the Board of jurisdiction, while at the same time requiring the Board to remand to the

Intermediary.

40.    Moreover, the Secretary exceeded the scope of her statutory authority in

promulgating a carte blanche rule which purports to divest the Board of jurisdiction over the

three categories of appeals subject to CMS 1498-R. The PRRB has the inherent right as an administrative tribunal created by Congress to make determinations as to its own jurisdiction under the facts of each specific case. The Secretary's preemption of the PRRB's prerogative to determine its own jurisdiction constituted a violation of the organic statute under which the Board operates. See 42 U.S.C. §1395oo.

41. CMS Ruling 1498-R purports to divest the Board of jurisdiction based on the premise that including all "non-covered" days in the SSI fraction eliminates any "controversy" concerning this issue, and thereby renders "moot" all pending appeals. However, plaintiffs in this case are claiming "non-covered" days as part of the Medicaid fraction, and not the SSI fraction. As a result, CMS Ruling 1498-R does not eliminate the "controversy" concerning whether non-covered days should be included in the SSI or the Medicaid fraction.

42. Additionally, the Secretary's authority under 42 U.S.C. §1395oo is limited to "reversal, affirmance, or modification" of a Board decision. This language does not encompass the authority to order the Board to remand back to the Intermediary, as required by Ruling 1498-R. The Board is also not given the authority under 42 U.S.C. §1395oo to order a remand back to the Intermediary.

43. Some of the cost years at issue in this case are nearly twenty years old. As a result of CMS 1498-R, the provider has still not received the final agency determination required to trigger its judicial review rights.

## CMS 1498-R WAS INVALIDLY PROMULGATED

44. It is well settled that an agency may not promulgate a retroactive rule absent express

congressional authorization. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

Moreover, once an agency gives its interpretation to a regulation, it can only change that

interpretation as it would formally modify the regulation itself: through the process of notice and

comment rulemaking under 5 U.S.C. § 553.   *Paralyzed Veterans of America v. D.C. Arena L.P.*,

117 F.3d 579, 586 (D.C. Cir. 1997).

  45. Ruling 1498-R explicitly concedes that CMS has changed policies on whether

"non-covered" days may be included in the SSI fraction.   The Ruling states that it was not until

2005 that CMS determined that "non-covered" days could be included in the SSI fraction.1

Prior thereto, the Secretary interpreted the term "entitled" to mean "covered" or "paid." *See* 69

Fed. Reg. 48916, 49098-99 (Aug. 11, 2004) (discussing October 1, 2004 as the date to *begin*

counting exhausted benefit days in the Medicare/SSI fraction); *see also* 70 Fed. Reg. 47278,

47441 (Aug. 12, 2005) (explaining that CMS's "policy change" with respect to Medicare

secondary payor days applies to "FY 2005 and subsequent years"). See also *Catholic Health*

*Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 921 (fn. 5) (D.C. Cir. 2013).

  46. The days in question in the present case were non-covered days which occurred

prior to 2005.   As such, these days would have been excluded from the SSI fraction applying the

regulations in effect when the inpatient stays actually occurred. Therefore, remanding these days

for inclusion in the SSI fraction under 1498-R constitutes retroactive rulemaking.

---

1 Ruling 1498-R states as follows:   "*Under CMS' original policy, inpatient days were included in the numerator of the DSH SSI fraction <u>only</u> if the inpatient Provider days were "covered" under Medicare Part A and the patient was entitled to SSI benefits; Part A coverage of inpatient days alone was required for inclusion in the denominator of the SSI fraction. See, e.g., 42 C.F.R. § 412.106(b)(2)(i) (2003).*"

47.     The publication requirements of the Medicare Act also provide that "*no rule,*

*requirement, or other statement of policy that establishes or changes a substantive legal*

*standard governing the scope of benefits, the payment for services, or the eligibility of*

*individuals, entities, or organizations to furnish or receive services shall take effect unless it is*

*promulgated by the Secretary by regulation.*"   42 U.S.C. § 1395hh(a)(2). The Medicare Act also

requires the Secretary to publish in the Federal Register, a list of all manual instructions,

interpretative rules, statements of policy, and guidelines of general applicability. 42 U.S.C. §

1395hh(c). The Freedom of Information Act ("FOIA") similarly requires an agency to publish in

the Federal Register statements of general policy and interpretations of general applicability. 5

U.S.C. §552(a)(1)(D).

48.     The policy contained in CMS 1498-R falls within the ambit of the publication

requirements of 42 U.S.C. § 1395hh(a)(2) and/or 1395hh(c), as well as 5 U.S.C. §552(a)(1)(D).

The Secretary's failure to publish CMS Ruling 1498-R until after the cost years at issue in this

case was a violation of these requirements, and the Secretary is therefore precluded from

applying the interpretation contained in CMS 1498-R to the Provider in this case.   42 U.S.C. §

1395hh(e); 5 U.S.C. §552(a)(1); 5 U.S.C. §552(a)(2).

## SPECIFIC FACTS PERTAINING TO THIS CASE

49.     Provider filed its timely appeal before the PRRB.

50.     The stated issue in the appeal was:

a. Whether the Intermediary determined Medicare Reimbursement for
Disproportionate Share Payments in accordance with the Medicare statute 42 U.S.C.
§1395ww(d)(5)(F)(vi)(I)-(II).   Specifically, the Provider disagrees with the
Intermediary's calculation of the Disproportionate Share percentage set forth at 42 C.F.R.
412.106(b)(2)(I) of the Secretary's regulations;

b.   The Provider further contends that in adjusting the Provider'' SSI percentage, the Intermediary failed to finalize the Provider's DSH Supplemental Security Income proxy in accordance with 42 U.S.C. §1395ww(d)(5)(C)(i), 42 C.F.R. §412.106(b)(2)(i), 65 Fed. Reg.50548 (August 18, 2000), and other laws, regulations, manuals, and Medicare Program Memorandum.   The Intermediary failed to furnish matching data from which the SSI proxy had been derived;

c.   The Provider further disagrees with the calculation of the second computation of the disproportionate share patient percentage, set forth at 42 C.F.R. § 412.106(b)(4) of the Secretary's regulations. The Intermediary, contrary to the regulation, failed to include as Medicaid-Eligible Days, services to patients eligible for Medicaid, as well as patients eligible for general assistance.

51.   By decision dated December 23, 2010, (attached hereto as **Exhibit "G"**), the PRRB issued its order declaring that the Provider's claims were governed by CMS Ruling 1498-R and remanding the case back to Intermediary for proceedings consistent with CMS Ruling 1498-R. CMS Ruling 1498-R is binding on all components of HHS, including the PRRB. See, 42 C.F.R. §§ 401.108(c); 405.1867.

52.   In response to the Board's action to remand, Plaintiff Provider filed its timely requests for the Board's reconsideration of its rulings, and seeking Expedited Judicial Review (attached hereto as **Exhibit "H"**). To date, Plaintiff Provider has not received the Board's decision on such request.

## COUNT I

## <u>UNLAWFUL TREATMENT OF THE MEDICARE SECONDARY PAYER,</u>

## <u>EXHAUSTED BENEFIT AND OTHER SIMILAR DAYS IN THE DSH CALCULATION</u>

53.   Provider hereby incorporates by reference paragraphs 1 through 52 of the Complaint as though fully set forth herein.

54.   CMS Ruling 1498-R requires the inclusion of non-covered inpatient hospital days in the SSI/Medicare Fraction, including Medicare Secondary Payer, Exhausted Benefit and other

similar days.   Inclusion of these days in the SSI/Medicare Fraction is invalid because it is contrary to the plain language of the statue, and is also inconsistent with the Secretary's practice during the time periods relevant to this appeal and it is the result of an invalid retroactive rule making, according to *Northeast Hospital, supra.*

55.     Upon remand, the Secretary has stated that Part C days under 42 U.S.C. § 1395w-21 will also be included in the SSI/Medicare Fraction.   Inclusion of Part C days in the SSI/Medicare Fraction is also invalid because it was inconsistent with the Secretary's practice during the time periods relevant to this appeal and because it would also be inconsistent with the plain language of the statute and the D.C. Circuit's decision in *Northeast Hospital, supra.*

56.     Based on the foregoing, the Board's decision dated August 19, 2013 remanding the Provider's appeals back to the Intermediary for inclusion of MSP, EB and Part C days in the SSI/Medicare Fraction, as required by CMS Ruling 1498-R, was arbitrary and capricious and otherwise not in accordance with law.   5 U.S.C. §706(2)(A).

57.     As a result of the Secretary's unlawful Ruling and instructions to its Fiscal Intermediaries the Provider will suffer economic harm because its DPP and/or DSH adjustments will be lower than that to which it is entitled under the law.

58.     Based upon the foregoing, Provider is entitled to an order declaring the Secretary's instructions in CMS Ruling 1498-R to be unlawful and/or for a Mandamus Order requiring the Secretary to calculate the Provider's DPP for the fiscal years at issue here correctly, as elucidated in *Northeast Hospital, supra.*

## COUNT II

## CONTINUED FAILURE TO USE BEST AVAILABLE DATA TO CALCULATE THE

## SSI FRACTION

59.     Provider hereby incorporates by reference paragraphs 1 through 58 of the Complaint as though fully set forth herein.

60.     CMS Ruling 1498-R is arbitrary, capricious, in violation of the Medicare Act and/or otherwise in violation of the law, in violation of 5 U.S.C. §706(2)(A), because it continues to fail to use, "the most reliable data available to produce figures that can be considered sufficiently accurate", and otherwise fails to comply with the *Baystate* decision, *supra,* including:

    a.     The failure to use Social Security numbers in the matching process.

    b.     The revised matching process fails to take into consideration SSI beneficiaries who are entitled to SSI, but whose payments are in suspense or other non-pay status.

    c.     Under the terms of the Ruling, individuals are "entitled" to SSI only when they actually receive an SSI payment, whereas individuals are deemed "entitled" to Medicare even if they do not receive any payment from Medicare.

    d.     Individuals whose SSI benefits are retroactively awarded will be captured in the matching process only in the month in which the retroactive payment is actually made, and not in the prior months, which the retroactive payment was intended to cover.

61.     As a result of the foregoing deficiencies, the Provider will suffer economic harm because its DPP and/or DSH adjustments will be lower than that to which it is entitled under the law.

62.     Based on the foregoing, Provider is entitled to an order declaring the Secretary's

instructions in CMS Ruling 1498-R to be unlawful and/or for a Mandamus Order requiring the Secretary to use the best available data, as elucidated herein, to calculate the SSI fraction.

## COUNT III

## <u>CMS RULING 1498-R IS PROCEDURALLY UNLAWFUL AND MUST BE WITHDRAWN</u>

63.     Provider hereby incorporates by reference paragraphs 1 through 62 of the Complaint as though fully set forth herein.

64.     CMS Ruling 1498-R constitutes a significant departure from the Secretary's interpretation of the Medicare statute and the processing of appeals before the Board; therefore, the Secretary was subject to the advance notice and comment rule making required by the Administrative Procedures Act, 5 U.S.C. §553. The Secretary violated the Administrative Procedures Act by failing to abide by advanced notice and comment rule making.

65.     CMS Ruling 1498-R purports to render the Provider's appeal over issues covered thereby as if they had been resolved on the merits in the Provider's favor by way of an order requiring the intermediary to recalculate the Provider's DPP and DSH adjustment in accordance with the strictures of the Ruling, thereby divesting the Board of jurisdiction over the categories of appeals covered by that Ruling.

66.     The remand pursuant to CMS Ruling 1498-R is a final determination of the Provider's rights, ripe for review by this Court pursuant to 42 U.S.C. § 1395oo(f) (which states that the decisions of the Board are final and reviewable by the District Courts unless the Secretary reverses, affirms or modifies the Board's decision).

67.     In the alternative, it would be in excess of the Secretary's authority under the

Medicare Act to make a determination that its decision to require intermediaries to take action consistent with CMS Ruling1498-R resolves the *Provider's* dissatisfaction.  *See,* 42 U.S.C. § 1395oo(a) ("Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board...if...such provider...is dissatisfied with a final determination... as to the amount of total program reimbursement due the provider... for the period covered by such report."). In this case, however, as more specifically stated in this Complaint, Ruling 1498-R does not satisfy the Provider's dissatisfaction with the final determination as to the amount of total program reimbursement due for the period covered by the cost reports at issue in this Complaint.

68.     The publication requirements of the Medicare Act also provide that, "no rule, requirement, or other statement of policy that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services shall take effect unless it is promulgated by the Secretary by regulation."   42 U.S.C. §1395hh(a)(2).   The Medicare Act also requires the Secretary to publish in the Federal Register, a list of all manual instructions, interpretive rules, statements of policy, and guidelines of general applicability.   42 U.S.C. § 1395hh(c).   The Freedom of Information Act ("FOIA") similarly requires an agency to publish in the Federal Register statements of general policy and interpretations of general applicability.   5 U.S.C. § 552(a)(1)(D).

69.     The policy contained in CMS Ruling 1498-R falls within the ambit of the publication requirements of 42 U.S.C. § 139599(a)(2) and/or 1395hh(c), as well as 5 U.S.C. §552(a)(1)(D).

The Secretary's failure to publish CMS Ruling 1498-R until after the fiscal years at issue in this case was a violation of these requirements, and the Secretary is therefore precluded from applying the interpretation contained in CMS Ruling 1498-R to the Provider in this case.  42 U.S.C. § 1395hh(e); 5 U.S.C. § 552(a)(1); 5 U.S.C. § 552(a)(2).

70.     As a result of the CMS Ruling 1498-R, and the calculations mandated thereby, the Provider will suffer economic harm because its DPP and/or DSH adjustments will be lower than that to which it is entitled under the law.

71.     Based upon the foregoing, Provider is entitled to an order declaring the Secretary's issuance of CMS Ruling 1498-R to be unlawful and/or for a Mandamus Order requiring the Secretary to withdraw the Ruling.

## COUNT IV

## MANDAMUS TO PRODUCE SSI ENTITLEMENT DATA

72.     Provider hereby incorporates by reference paragraphs 1 through 71 of the Complaint as though fully set forth herein.

73.     The Secretary also has a non-discretionary duty to provide access to SSI entitlement data so that Provider can compute its own SSI/Medicare Fraction. Section 951 of the Medicare Prescription Drug, Improvement and Modernization Act ("MMA") of 2003, Pub. L. No. 108-173 (2003) required HHS to arrange by December 8, 2004 to furnish hospitals with the data necessary to compute the number of patient days used in calculating the disproportionate patient percentage. There are no legal remedies available to Provider to compel disclosure by the Secretary of the data falling within the purview of Section 951 of the MMA.   As such, Provider is entitled to a Writ of Mandamus pursuant to 28 U.S.C. § 1361, directing the Secretary to furnish Provider such data as

is required so that Provider may compute its own SSI/Medicare Fraction.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Provider prays for an Order:

74.   Reversing and setting aside the decision of the PRRB;

75.   Declaring that CMS Ruling 1498-R is invalid, and that the Board's action in remanding the Provider's appeals back to the Intermediary pursuant to CMS Ruling 1498-R is arbitrary and capricious and contrary to law;

76.   Declaring the calculations required to be made in CMS Ruling 1498-R to be unlawful;

77.   Requiring, by way of mandamus or declaratory relief, the Secretary to retroactively withdraw CMS Ruling 1498-R and to reinstate all affected appeals to the Provider Reimbursement Review Board;

78.   Requiring, by way of mandamus or declaratory relief, the Secretary to calculate its DPP and DSH adjustments in accordance with this Circuit Court of Appeals' decision in *Northeast Hospital, supra,* and not as the Secretary has mandated in CMS Ruling 1498-R;

79.   Requiring, by way of mandamus or declaratory relief, the Secretary to revise its SSI matching protocol to resolve the above-referenced deficiencies;

80.   Requiring, by way of mandamus, and directing the Secretary to provide such additional data so as to enable each Provider to compute its own SSI/Medicare Fraction;

81.   For an Order holding that Provider's request for Expedited Judicial Review was warranted and appropriate;

82.     Awarding the costs of this suit incurred by Provider;

83.     Awarding Provider interest as required by 42 U.S.C. § 1395oo(f); and,

84.     For such other and further relief as the Court may deem just and proper under the circumstances.

Dated: August 25, 2016

Respectfully Submitted,

SEDLEY HEALTH CARE LAW

*Alan J. Sedley*

ALAN J. SEDLEY Bar #OH0017
A Professional Law Corporation
19900 MacArthur Boulevard Suite 1150
Irvine, CA 92612
(949) 502-5399
asedley@smhealthlaw.com
Attorneys for Plaintiff